# SUPREME COURT.

## In the matter of Nelson A. Gessner.

*Arrest on warrant of police magistrate— Effect of indictment found by grand jury after examination has been commenced before such magistrate — Bail pending examination.*

The statute which defines the course of proceedings before a police magistrate or other officer authorized to issue a warrant for the arrest and apprehension of criminal offenders (3 *R. S.* [5th ed.], *page* 993, &c.), is mandatory in all its requirements. A duty is thereby devolved upon the officer who issues the warrant, which he must discharge.

When the prisoner is brought before the magistrate by the warrant which he issues upon a proper complaint and supported by evidence, he is *commanded* (the word used in the statute is "shall") to " proceed, as soon as may be, to examine the complainant and the witnesses produced in support of the prosecution on oath, in the presence of the prisoner, in regard to the offense charged and in regard to any other matters connected with such charge which such magistrate shall deem pertinent." The magistrate *must* reach a conclusion whether there is or is not probable cause for charging the prisoner with the crime.

A bill of indictment found by a grand jury against a prisoner after an examination has been commenced before a magistrate authorized to issue a warrant of arrest, is not expressly declared to be a *supersedeas* of the powers and duties of the magistrate, and it is not so inconsistent with a continuance thereof as so to operate by necessary implication, nor can a warrant issued upon it take the prisoner from the jurisdiction of such magistrate until his statute duties have been fulfilled.

The power to admit a prisoner to bail pending an examination before a police justice is, by the act of 1876 (*chapter* 21), conferred upon the magistrate before whom the proceedings are being held.

*New York Chambers, September*, 1877.

Proceedings by *habeas corpus* to inquire into the cause of the detention of Gessner.

*John Graham* and *C. Bainbridge Smith* for prisoner.

*Mr. Herring* and *Wm. V. Leary* for people.

WESTBROOK, *J.* — To the writ of *habeas corpus* issued and served upon him, the warden of the city prison returns that he holds the prisoner, Nelson A. Gessner, under two warrants of commitment, one of Patrick G. Duffy, a police magistrate of the city of New York, committing said Gessner pending an examination upon a complaint charging him with the crime of forgery, and the other a bench warrant from the court of sessions of the county of New York, issued upon an indictment found by the grand jury of said court, and accusing him of the same crime.

The proof shows that on the 22d day of August, 1877, a complaint was made to the said Mr. Justice Duffy, charging the prisoner with forging and uttering a check upon the Third National Bank of New York, bearing date December 8, 1876, purporting to be made by Winslow, Lanier & Co., for the sum of $26,668.75, and payable to the order of H. C. Friedman & Co. Upon this charge a warrant was issued, and the prisoner was brought before the justice. On the thirtieth day of August the examination before the magistrate was commenced, and, against the protest of the prisoner's counsel, such examination was postponed from said day (Thursday) to the following Monday morning. The adjournment was made at the request of Mr. Herring, the assistant district attorney, who represented the people before the magistrate. On Monday morning the prisoner and his counsel again appeared before the justice, when Mr. Leary, also an assistant of the district attorney, asked, on account of the alleged official duties of Mr. Herring, a further adjournment of the examination until the afternoon of that day. Although the prisoner's counsel objected, the application was granted, the justice declaring, however, that he would then continue the examination " as long as it was sunlight, and go on from

day to day until it was finished." To the suggestion of the prisoner's counsel that it was understood the examination should go on in the afternoon, Mr. Leary assented. At three o'clock, P. M., or a little after, the magistrate took his seat, the prisoner and his counsel being present, when Mr. Herring stated that " a bill had been found by the grand jury, and that ended the power of the justice." The justice coincided in the view so far as to deliver over the prisoner to the officer having the bench warrant, and finally, on the urgent application of the prisoner's counsel, adjourned the examination before him to the twenty-eighth of September, instant, to give them an opportunity to relieve the prisoner from the arrest under the bench warrant issued by the court of sessions. Upon the return of Mr. justice Duffy to the writ of *certiorari*, the return of the warden of the city prison to the writ of *habeas corpus*, and the evidence taken upon this hearing, from which the foregoing facts appear, the prisoner's counsel ask, not that the prisoner should be discharged from all custody, but that he should be relieved from imprisonment under the bench warrant, in order that the justice who issued the other commitment, under which the prisoner is detained, can proceed with the examination begun before him, as the statute, according to the claim of prisoner's counsel, directs. The relief which the prisoner asks depends upon the effect, if any, which an indictment found, after an examination has been commenced before a magistrate, has upon such a proceeding.

The course of procedure before an officer authorized to issue a warrant for the arrest and apprehension of criminal offenders is clearly defined by statute (3 *R. S.* [*5th ed.*], 993, *&c.*). When the prisoner is brought before him by the warrant, which he issues upon a proper complaint and supported by evidence, he is commanded (the word used in statute is " shall ") to " proceed as soon as may be to examine the complainant and the witnesses produced in support of the prosecution, on oath, in the presence of the prisoner, in

regard to the offense charged, and in regard to any other matters connected with such charge, which such magistrate shall deem pertinent" (3 *R. S.* [*5th ed.*], 995, *sec.* 14). Provision is then made for the examination of the prisoner and for the presence of counsel in his behalf, and it is then (*sec.* 17) declared, "after the examination of the prisoner is completed, his witnesses, if he have any, shall be sworn and examined, and he may have the assistance of counsel in such examination." After giving various other directions touching the proceeding, by sections 20 and 21, the magistrate must reach a conclusion whether there is or is not probable cause for charging the prisoner with the crime; and if he thinks there is not, he must discharge the prisoner; but if he thinks there is, he "shall bind by recognizance the prosecutor and all the material witnesses against such prisoner, to appear and testify at the next court having cognizance of the offense, and in which the prisoner may be indicted."

It will be observed that the statute is mandatory in all its requirements. A duty is thereby devolved upon the officer who issues the warrant, which he must discharge. No person, after a complaint is made and warrant issued, so represents the people as to be able to withdraw the proceeding and the complaint. The magistrate is directed to do certain things, and he must do them, unless some statute direction relieving him from their performance can be found. The counsel for the people do not claim that there is any express provision of our statute law which makes the finding of an indictment a *supersedeas* of the powers and duties of the magistrate; but they argue because a grand jury can indict, it follows that the magistrate cannot further proceed. If the indictment is conceded to be regular, it is not seen how the further conclusion follows. It is true, that the discharge of the prisoner by the magistrate is no bar to an indictment, but the effect of the decision, when made, and even its confessed uselessness, if that be conceded, does not and cannot absolve a magistrate from doing what the law in plain terms declares

Matter of Gessner.

he must do.   To all arguments founded upon the alleged
unprofitableness of the examination after an indictment is
found, it is answered that courts and magistrates cannot
excuse themselves from complying with statute mandates
because, in their opinions, such requirements can lead to no
practical good.   The needlessness of a continuance of an
examination after indictment is, however, not conceded; but,
on the contrary, its completion is deemed a most valuable and
substantial right of the accused.   By it he will be informed as
to the evidence and witnesses by which and whom the charge
is to be substantiated, the value of which information even the
unprofessional mind can plainly see, and of which the procure-
ment of the bill of indictment was designed to deprive him.

Conceding, then, the mandatory terms of the statutes under
which Mr. justice Duffy was acting when his proceedings
were arrested by the service of the bench warrant from the
court of sessions, it follows that the stoppage of such exami-
nation was unauthorized and illegal.   That an official duty
once begun, which the plain terms of the written law require
to be continued up to a certain result, must be so continued,
is too clear for argument.   It is equally clear that he who is
so charged with official duty has full power to execute and
discharge it, and he must so execute and discharge it.
If he must, then how can any court, or process issued
thereby, arrest his action and deprive him of his juris-
diction, unless the right so to do is expressly or by necessary
implication conferred ?   The finding of a bill of indictment
by a grand jury is certainly, as conceded, not an express
*supersedeas* of the examination by the magistrate, and it is
not so inconsistent with a continuance thereof as so to operate
by necessary implication.   For these reasons, hastily penned,
the prisoner, Nelson A. Gessner, must be relieved from the
imprisonment on the bench warrant and remanded to the
custody of the warden upon the warrant of Mr. justice
Duffy, to the end that such magistrate may discharge the
duty devolved upon him by law.

This conclusion which has been reached is more than sustained by the learned opinion of that most eminent jurist, the late judge EDMONDS, *In the Matter of Samuel Drury and Samuel Drury, Jr.*, a copy of which has been furnished to me. That judge held that an indictment procured pending an examination was "irregular and void," because when thus obtained it was "in fraud of the law." Without going to the extent of holding, as judge EDMONDS did, that the indictment found against Gessner should be quashed by the court having jurisdiction over it, it is held that a warrant issued upon it cannot take the prisoner from the jurisdiction of Mr. justice DUFFY, until his statute duties have been fulfilled. No reported case has been produced (whilst some exist denying the propriety of a motion to quash an indictment, because found pending an examination) which decides that an indictment found arrests the magistrate's proceedings.

In the absence of any such case, my own convictions must be followed, which are entirely clear, and lead me to the conclusion already announced. By the course which has been directed, every right of the people is preserved, and it is but just, that every fair and legitimate opportunity of defense which the law affords should be given to the accused. It is true the guilty should be punished, but to do so, the legal safeguards, which oftentimes shield the innocent, should not be broken down, that summary punishment may be inflicted in accordance with popular clamor or the fiery zeal of interested accusers.

Application has also been made to this court to admit the prisoner to bail pending the examination before Mr. justice DUFFY, which it has been held must proceed. The act of 1876 (*chap.* 21) confers that power upon the magistrate, and it is the only one, so far as I have discovered, which provides for bail pending the examination. The provisions of section 58, of page 879 of 3 Revised Statutes (*5th ed.*), apply only to the case of a party "legally committed for any criminal offense," (meaning a commitment after examination, and

those of section 31, page 1001, of same volume, to those cases in which then existing statutes provided for bail. Without formally deciding that this court is without power to bail the prisoner, it is better, as the power of the magistrate in this respect is undoubted, to confide that duty to Mr. justice Duffy. In its exercise he will not forget that the " bill of rights " of our state expressly declares that " excessive bail ought not to be required." It is conceded that the crime of which the prisoner is accused is that of forgery in the third degree, and whilst no dictation is made to him as to his duty, it is assumed that it will be so discharged as to protect the people, and yet not be oppressive and unjust to the accused.

# ERRATUM.

In the case of *Hayes* agt. *Buckley* (*ante, page* 173) in place of "R. D. Jones" read "R. O. Jones," and on page 186, thirteenth line from bottom, for "verdict" read "*judgment.*"